IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VIOLET CURRY, as the Personal Representative of the Estate of MICHAEL CURRY, Deceased | |
| Plaintiff, | Consolidated Under MDL DOCKET NO 875 |
| v. | Civil Action No. 09-65685 |
| AMERICAN STANDARD, et al., | |
| Defendants. | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        AUGUST 12, 2010

Before the Court is the report and recommendation ("R&R") issued by Magistrate Judge David R. Strawbridge, and joined by Magistrate Judges Elizabeth T. Hey and Judge M. Faith Angell ("the Panel"), and defendant Crane Co.'s objections thereto. The Panel recommends that the Court deny Crane Co.'s motion for summary judgment.[1] Federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332. The issue

---

[1] This case was referred by Order of the Presiding Judge of MDL-875 to a panel of three magistrate judges pursuant to MDL-875 summary judgment procedures regarding issues of causation (product identification), successor liability and settled issues of state law. (See MDL-875 summary judgment procedures, available at www.paed.uscourts.gov/mdl1875y.asp; see also Curry v. American Standard, et al., doc. no. 51). In the instant case, the R&R was filed after all parties were afforded an opportunity to brief all relevant summary judgment issues and lengthy argument in front of the Panel.

1

before the Court revolves around product identification.

I. BACKGROUND

Michael Curry was diagnosed with mesothelioma in July 2008, and filed this personal injury action in the Supreme Court of the State of New York on October 8, 2008 alleging exposure to asbestos while employed on the USS Kitty Hawk ("Kitty Hawk") from 1963-1965. (Pl.'s Mot. Summ. J., doc. no. 31, at 1,2). The matter was removed to the United States District Court for the Southern District of New York and subsequently transferred to the Eastern District of Pennsylvania as part of MDL 875 in April of 2009. Mr. Curry passed away on December 14, 2009, and Violet Curry was substituted as the named representative of his estate. (Pl.'s Motion to Amend Compl., doc. no. 37, at 1).

Mr. Curry began serving aboard the Kitty Hawk as a "fireman apprentice, boiler man striker" in January 1963. (Curry Discovery Dep. Vol I, doc. no. 32, at 44:9-21). Mr. Curry was assigned to the "four main machine room" ("MMR4") where his responsibilities included standing watch, cleaning, taking readings from certain machinery, performing basic repairs on valves, and maintaining and operating pumps. (Id. at 45-48; 51-54). In January 1965, he became a boiler man third class and was given the additional responsibility of training others to repair the equipment. (Id. at 47-48:1-5).

Mr. Curry testified that there were "thousands of valves"

within MMR4 and that the majority of the valves were manufactured by Crane Co. (Id. at 101:25, 124:8-10). Mr. Curry testified that everything in MMR4 was covered with lagging and asbestos, and every valve in the boiler room "had asbestos gaskets between the flanges" and "asbestos packing in the form of rope type packing around the valves." (Curry Video Dep., doc. no. 31 at 13:6-12). Mr. Curry testified that his exposure to asbestos occurred when he opened up or "broke apart" valves in order to replace packing material and that he removed and replaced flanged gaskets on these valves. (Curry Discovery Dep., Vol. II, doc. no. 31 at 338-40, 354-55, 360-65).

Crane Co. moved for summary judgment, arguing that Plaintiff failed to establish that Crane Co. products caused Mr. Curry's injuries. (Crane Co.'s Mot. Summ. J., doc no. 25 at 2). Crane Co. asserts that it cannot be held responsible for replacement parts or external insulation which contained asbestos that were not "manufactured, supplied, or specified by Crane Co." (Id. at 7-8). The Panel issued a Report and Recommendation on June 21, 2010, denying Crane Co.'s motion for summary judgment.

Crane Co. raises three specific objections to the R&R. First, Crane Co. argues that evidence implicating original Crane Co. packing and insulation is based on mere speculation. (Crane Co. Objects., doc. no. 55 at 1). Second, Crane Co. argues that any original packing and insulating material would have been

replaced prior to Mr. Curry's employment on the Kitty Hawk. (Id.) Finally, Crane Co. argues that it cannot be held responsible for asbestos-containing replacement parts that it did not manufacture or supply. (Id.)

For the reasons set forth fully below, the court overrules each of these objections, and adopts the Panel's R&R denying Crane Co.'s motion for summary judgment.

II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(C), "a judge of the Court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made. A judge of the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

When evaluating a motion for summary judgment, Federal Rule of Civil Procedure 56 provides that the Court must grant judgment in favor of the moving party when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c)(2). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is

sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact. Id. at 248-249. "In considering the evidence the court should draw all reasonable inferences against the moving party." El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)). Once the moving party has thus discharged its burden the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

III. DISCUSSION

To establish proximate cause for an asbestos injury under

New York law,[2] a plaintiff must demonstrate that he was exposed to the defendant's product and that it is more likely than not that the exposure was a substantial factor in causing his injury. See Johnson v. Celotex Corp., 899 F.2d 1281, 1285-86 (2d Cir. 1990). Jurors are instructed that an act or omission is a "substantial factor . . . if it had such an effect in producing the [injury] that reasonable men or women would regard it as a cause of the [injury]." Rubin v. Pecoraro, 141 A.D.2d 525, 527 (N.Y. App. Div. 1988). A particular defendant's product need not be the sole cause of injury. However, a plaintiff "must produce evidence identifying each [defendant]'s product as being a factor in his injury." Johnson, 899 F.2d at 1286.

As set forth fully below, Plaintiff has raised a genuine issue as to whether Crane Co. valves were a substantial factor in Mr. Curry's exposure to asbestos and subsequent mesothelioma diagnosis. Each of Crane Co.'s objections to the Magistrate Judges' report and recommendation will be addressed in turn.

> A. The Finding that Mr. Curry worked on Original Asbestos-containing Gaskets and Packing in Crane Co. Valves is based on Mere Speculation

Crane Co. takes issue with Mr. Curry's testimony that he

---

[2] The Panel engaged in a choice-of-law analysis and determined that New York law applies. Crane Co. did not object to the application of New York law to the issue of causation, but asserts that the Court may also consider maritime law on the issue of causation, as there is no conflict between the two. (Crane Co. Objects., doc. no. 55 at 4, n.2).

"probably" engaged in the first dismantling of Crane Co. valves. However, this Court finds that Mr. Curry's testimony, combined with other evidence in the case, is sufficient to raise a genuine issue of material fact as to an initial dismantling. When asked if he was "ever involved in the first dismantling" of a cross-connecting gate valve (which Mr. Curry identified as manufactured by Crane Co.) he responded, "[T]o the best of my recollection, I would say I probably did, because the ship was relatively new, less than two years when I went on board it. So some of the valves would be taken apart for the first time." (Curry Discovery Dep., Vol II, doc. no. 31 at 355:9-13). Indeed, the Kitty Hawk was constructed from 1956-1961, and commissioned on April 29, 1961.[3] (Arnold Moore Expert Report, doc. no. 56, Exhibit B at 11, 3). Mr. Curry began serving aboard the Kitty Hawk on January 1963. (Pl.'s Mot. Summ. J., doc. no. 31, at 2). This timeline raises a genuine issue of material fact as to whether Mr. Curry performed maintenance on original packing and insulating material on Crane Co. valves.

Additionally, the Panel found that Mr. Curry's testimony regarding a "complete overhaul" of the Kitty Hawk from September

---

[3] Crane Co.'s Objections state that the Kitty Hawk was launched in 1960, and refers to Arnold Moore's expert report for that proposition. (Crane Co. Objects., doc. no. 55 at 3). Arnold Moore's expert report does not specify the launch date, but states that "Her keel was laid on 27 December 1956 and she was commissioned on 21 April 1961." (Arnold Moore Expert Report, doc. no. 56, at 3).

7

1964 until March 1965 raised a genuine issue of material fact as to initial dismantling. (Curry Video Dep., doc. no. 31 at 29:3-9). During the overhaul, the Kitty Hawk was docked in the Puget Sound Naval Shipyard, roughly 1,000 workers boarded the ship, and work was done on "every aspect of the ship." (Id.) Mr. Curry testified that he was exposed to asbestos during this time because "they had everything tore apart. Had our pumps tore apart. Had our valves apart." (Id.) at 30.

Other evidence on record supports an inference that the 1964 overhaul could have resulted in Mr. Curry being exposed to original Crane Co. asbestos-containing gaskets or packing material. First, there is evidence on record that certain Crane Co. valves contained "asbestos-containing gaskets, packing, or discs." (Crane Co. Answers to Plaintiffs' Standard Set of Liability Interrogatories, doc. no. 31-4 at 12). Additionally, when asked what equipment could have exposed him to asbestos on the Kitty Hawk, Mr. Crane replied that,

> predominately everything in the boiler room was covered with lagging and asbestos. Plus all the valves had asbestos gaskets between the flanges, and if they – if they had stems, asbestos packing in the form of rope type packing around the valves, the valve stems that were used for packing. (Curry Video Dep., doc. no. 31 at 13).

Overall, Mr. Curry's testimony regarding an initial dismantling, although qualified, raises a genuine issue of material fact for a jury to decide. When viewed in a light most favorable to Plaintiff, the young age of the Kitty Hawk, Mr.

Curry's testimony regarding both regular maintenance and the 1964 overhaul, and Crane Co.'s admission of the use of asbestos material is sufficient to raise a genuine issue of material fact as to whether Crane Co. caused Mr. Curry's injuries.

Accordingly, Crane Co.'s first objection is overruled.

B. There is Evidence that Original Asbestos-Containing Material Would have been Replaced Prior to Mr. Curry's Employment on the U.S.S. Kitty Hawk

Crane Co. asserts that Mr. Curry's own testimony indicates that, because of the frequency with which gasket replacement work was done, it is highly likely that any original Crane Co. gaskets hade already been replaced by the time Mr. Curry began his employment in 1963. Mr. Curry testified that gasket replacement work on fuel valves was conducted "[p]eriodically" and "could be once every two months or usually when the chief spotted it." (Curry Discovery Dep., Vol. I, doc. no. 32 at 107:10-14). Similarly, gasket replacement work on backseat valves was performed "two or three times a year" or when they leaked. (Id. at 118:4-8).

This testimony certainly raises a question as to whether certain Crane Co. valves had already been replaced by the time Mr. Curry boarded the Kitty Hawk in 1963. However, this testimony is limited to fuel valves and backseat valves. Mr. Curry also testified that there were "thousands of valves" within the MMR4 and that the "majority of the valves were Crane."

(Curry Discovery Dep. Vol I, doc. no. 32, at 44:9-21). While Mr. Curry testified that gaskets on fuel valves and backseat valves had to be changed frequently, that is not the case for all of the Crane Co. valves located in MMR4.

For example, the large cross-connecting and gate valves, which Mr. Curry identified as Crane valves, were not subject to regular maintenance. Mr. Curry testified that,

> We didn't have the equipment to take apart a huge valve. Usually that would be, you know, saved for yard work doing any kind of overhaul on a big valve, but the smaller valves we would work on, and depending on when they leaked . . . (Curry Discovery Dep. Vol II, doc. no. 31 at 355:11-18).

Therefore, Mr. Curry's testimony raises a genuine issue of material fact as to whether he was exposed to original Crane Co. asbestos materials contained in Crane Co. valves during the 1964 overhaul of the Kitty Hawk.

Accordingly, Crane Co.'s second objection is overruled.


C. Crane Co. is not Liable for Asbestos-containing
   Products Affixed to its Products After Sale

Finally, Crane Co. argues that it did not manufacture the asbestos-containing products at issue, and cannot be held liable for replacement or component parts that it did not manufacture or supply. The Panel did not find it necessary to reach the merits of Defendant's argument regarding replacement or component parts. The Panel correctly concluded that even if Crane Co. cannot be

held accountable for the addition of asbestos insulation to its products, the record indicates that the Plaintiff could have been exposed to original Crane Co. valves, which included asbestos gaskets and packing material.

Additionally, the Panel correctly determined that Crane Co.'s liability as a "bare metal" supplier is outside the scope of this Court's referral order, which is limited to issues of causation. Crane Co.'s argument is essentially that it had no duty to warn of the dangers of asbestos that it neither manufactured nor installed, which is a separate issue from causation, and one on which courts have reached divergent results. See, e.g., Berkowitz v. A.C. & S, Inc., 288 A.D.2d 148, 148 (N.Y. App. Div. 2001)(finding that defendant may have had a "duty to warm concerning the dangers of asbestos that it neither manufactured or installed on its pumps"). But see, Rastelli v. Goodyear Tire & Rubber Co., 79 N.Y.2d 289, 297-98 (1992) (holding that there is no duty to warn when a manufacturer "produces a sound product which is compatible for use with a defective product").

Therefore, this Court will not address Crane Co.'s argument that it had no duty to warn for defective products used in conjunction with its own. As the MDL transferee court, and as a matter of efficient judicial administration, this Court is reluctant to predict the outcome of this unsettled issue, the

11

merits of which have not been adjudicated by the New York Court of Appeals.  Therefore, the merits of the "bare metal defense" is best left for determination in the transferor court, the Southern District of New York, which has more experience and familiarity with the application of New York state substantive law.  This ground for summary judgment will be denied without prejudice with leave to refile in the Southern District of New York after remand.

Accordingly, Crane Co.'s third objection is overruled, with leave to refile in the transferor court after remand.


IV. CONCLUSION

Each of Crane Co.'s objections to the Panel's R&R are overruled.  The Court adopts the Panel's R&R denying summary judgment as to Plaintiff's claims against Crane Co.

An appropriate order follows.