IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VIOLET CURRY, as the Personal  :
Representative of the Estate   :
of MICHAEL CURRY, Deceased     :
                               :         Consolidated Under
     Plaintiff,                :         MDL DOCKET NO 875
                               :
     v.                        :         Civil Action
                               :         No. 09-65685
AMERICAN STANDARD,             :
et al.,                        :
                               :
     Defendants.               :

                    M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          AUGUST 18, 2010

Before the Court is the report and recommendation ("R&R") issued by Magistrate Judge David R. Strawbridge, and joined by Magistrate Judges Elizabeth T. Hey and Judge M. Faith Angell ("the Panel"), and defendant Buffalo Pump, Inc.'s objections thereto. The Panel recommends that the Court deny Buffalo Pump, Inc.'s motion for summary judgment.[1] Federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332. The issue before the Court is product identification.

---

[1] This case was referred by Order of the Presiding Judge of MDL-875 to a panel of three magistrate judges pursuant to MDL-875 summary judgment procedures regarding issues of causation (product identification), successor liability and settled issues of state law. (See MDL-875 summary judgment procedures, available at www.paed.uscourts.gov/mdl1875y.asp; see also doc. ). In the instant case, the R&R was filed after all parties were afforded an opportunity to brief all relevant summary judgment issues and lengthy argument in front of the Panel.

1

I.   BACKGROUND

Michael Curry was diagnosed with mesothelioma in July 2008, and filed this personal injury action in the Supreme Court of the State of New York on October 8, 2008 alleging exposure to asbestos while employed on the USS Kitty Hawk ("Kitty Hawk") from 1963-1965.  (Pl.'s Mot. Summ. J., doc. no. 31, at 1,2).  The matter was removed to the United States District Court for the Southern District of New York and subsequently transferred to the Eastern District of Pennsylvania as part of MDL 875 in April of 2009.  Mr. Curry passed away on December 14, 2009, and Violet Curry was substituted as the named representative of his estate.  (Pl.'s Motion to Amend Compl., doc. no. 37, at 1).

Mr. Curry began serving aboard the Kitty Hawk as a "fireman apprentice, boiler man striker" in January 1963.  (Curry Discovery Dep. Vol I, doc. no. 32, at 44:9-21).  Mr. Curry was assigned to the "four main machine room" ("MMR4") where his responsibilities included standing watch, cleaning, taking readings from certain machinery, performing basic repairs on valves, and maintaining and operating pumps.  Id. at 45-48; 51-54.  In January 1965, he became a boiler man third class and was given the additional responsibility of training others to repair the equipment.  Id. at 47-48:1-5.

Plaintiff's naval vessel expert, Arnold Moore, a retired Navy Captain, reported that three Buffalo pumps were in MMR4 of

the Kitty Hawk; one "auxiliary machinery cooling water pump, one mechanical cooling salt water circulating pump and one emergency diesel salt water booster pump." (Arnold Moore Expert Report, doc. no. 32, at 10)("Moore Report"). He further reported that information provided by Buffalo Pumps, Inc. ("Buffalo") confirm that these three pumps were manufactured for the Kitty Hawk. (Id.) The pumps were manufactured using asbestos to seal the water end pump shaft, and asbestos was also used in the pump's gaskets. (Id.)

Buffalo moved for summary judgment, arguing that Mr. Curry did not identify the name Buffalo in any of his depositions, and did not discuss working on any of the three pumps that Buffalo provided to the Kitty Hawk. (Def.'s Motion for Summ. J., doc. no. 24, at 3). The Panel issued a Report and Recommendation on June 21, 2010, denying Buffalo's motion for summary judgment.

Buffalo raises four objections to the Panel's R&R. First, Buffalo argues that the Panel mistakenly asserted that a reasonable jury could determine that the fourth feed pump Mr. Curry identified working on could have been a Buffalo pump. (Buffalo Objects., doc. no. 56 at 1). Second, Buffalo argues that Mr. Curry's testimony that most pumps were replaced on the Kitty Hawk is over-general, speculation, and insufficient to create an issue of fact. (Id.) Third, there is no evidence that Mr. Curry worked with an original Buffalo pump. (Id.) Finally,

Buffalo argues that it is not liable for asbestos-containing insulation or replacement parts that it did not manufacture or distribute. (Id.)

For the reasons set forth fully below, the court sustains Buffalo's first objection in part, overrules Buffalo's remaining objections, and adopts the Panel's R&R denying Buffalo's motion for summary judgment.

II. LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(C), "a judge of the Court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made. A judge of the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

When evaluating a motion for summary judgment, Federal Rule of Civil Procedure 56 provides that the Court must grant judgment in favor of the moving party when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c)(2). A fact is "material" if its existence or non-existence would affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of fact is "genuine" when there is

sufficient evidence from which a reasonable jury could find in favor of the non-moving party regarding the existence of that fact.  Id. at 248-249.  "In considering the evidence the court should draw all reasonable inferences against the moving party." El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by showing – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001)).  Once the moving party has thus discharged its burden the nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

III. DISCUSSION

To establish proximate cause for an asbestos injury under

New York law,[2] a plaintiff must demonstrate that he was exposed to the defendant's product and that it is more likely than not that the exposure was a substantial factor in causing his injury. See Johnson v. Celotex Corp., 899 F.2d 1281, 1285-86 (2d Cir. 1990). Jurors are instructed that an act or omission is a "substantial factor . . . if it had such an effect in producing the [injury] that reasonable men or women would regard it as a cause of the [injury]." Rubin v. Pecoraro, 141 A.D.2d 525, 527 (N.Y. App. Div. 1988). A particular defendant's product need not be the sole cause of injury. However, a plaintiff "must produce evidence identifying each [defendant]'s product as being a factor in his injury." Johnson, 899 F.2d at 1286.

As set forth fully below, Plaintiff has raised a genuine issue as to whether pumps manufactured by Buffalo were a substantial factor in Mr. Curry's exposure to asbestos and subsequent mesothelioma diagnosis. Each of Buffalo's objections to the Magistrate Judges' report and recommendation will be addressed in turn.

    A.    The Panel Mistakenly Concluded that One of the Four Feed Pumps Mr. Curry Identified Could have been Manufactured by Buffalo

---

[2] The Panel engaged in a choice-of-law analysis and determined that New York law, rather than maritime law, applies. Buffalo did not object to the application of New York law to the issue of causation.

1. **Buffalo's Objection is Sustained to the Extent that Buffalo did not Manufacture one of the Four Main Feed Pumps in MMR4**

Buffalo objects to the Panel's determination that, even though Mr. Curry did not specifically identify working on a Buffalo pump, one of the four main feed pumps he discussed could potentially be a Buffalo pump.

Mr. Curry did not identify Buffalo as the manufacturer of the pumps he worked on. (R & R, doc. no. 53, at 6). However, Arnold Moore's expert report identified three electric motor-driven Buffalo pumps that were manufactured for the Kitty Hawk, and that these pumps contained asbestos sealing and gaskets. (Moore Report, doc. no. 56, at 10). The Buffalo pumps on board the MMR4 included an auxiliary machinery cooling water pump, mechanical cooling salt water circulating pump and emergency diesel salt water booster pump.

Mr. Curry specifically identified working on the four main feed pumps that fed water to the boilers in MMR4. (Curry Discovery Dep. Vol I, doc. no. 25, at 71:20-72:5). It appears that the Panel mistakenly equated the feed pumps that Mr. Curry discussed with the electric pumps manufactured by Buffalo. Mr. Curry identified Ingersoll-Rand as the manufacturer of three of the four feed pumps. (Curry Discovery Dep. Vol I, doc. no. 25, at 72:4-5). The Panel concluded that, "viewing the evidence in a light most favorable to Plaintiff, we conclude that a reasonable juror could find that the fourth, electric motor driven pump that

Mr. Curry described was one of Defendant [Buffalo]'s products." (R & R, doc. no. 53, at 7).

Defendant objects to this finding on the basis that Arnold Moore's expert report specifically identifies the manufacturers of the four main feed pumps. The report states that, "Three Ingersoll-Rand main feed pumps driven by Carrier steam turbines were installed in each MMR on KITTY HAWK" and that "Allis-Chalmers is identified as the manufacturer of one main feed booster pump driven by a Whiton steam turbine in each MMR . . ." (Moore Report, doc. no. 56, at 8, 11). Therefore, it appears that Buffalo is not the manufacturer of any of the four main feed pumps to which Mr. Curry specifically referred.

Accordingly, Defendant's first objection is sustained on those grounds.

> 2. Buffalo Pump's Objection is Overruled to the Extent that Mr. Curry's Testimony Regarding Pump <u>Maintenance Implicates Buffalo Pumps</u>

This Court's review of the Panel's R&R is de novo, and the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). This Court finds that there remains a genuine issue of material fact as to whether Mr. Curry was exposed to Buffalo pumps, and that, when viewed in a light most favorable to the plaintiff, Mr. Curry's testimony regarding pumps could fairly be read to implicate Buffalo products.

During oral argument, defense counsel stated that "the types

of pumps identified [by Mr. Curry] were feed pumps, fuel pumps, bilge pumps, lube oil pumps, feed water pumps and fuel service pumps." (Oral Arg. Trans., doc. no. 48, at 71:6-8). Buffalo contends that the three types of Buffalo pumps do not fit into any of these categories, and that, while Mr. Curry was able to identify the types and brands of many pumps, "None of the names were Buffalo, none of the types of pumps even overlap." (Id. at 73:3). However, defense counsel later states that, "I do believe [Mr. Curry] described pumps of that [water circulating] type, but he did not describe the pumps manufactured by Buffalo." (Id. at 82:6).

While it can be established that Buffalo did not manufacture the four main feed water pumps on the Kitty Hawk, there remains a genuine issue of material fact as to whether Mr. Curry's testimony regarding general "pumps" and "auxiliary equipment" implicates the Buffalo pumps described in the Moore's expert report. When asked about the regular repair work he conducted, Mr. Curry testified that "my regular repair duties would be the maintenance of the burners, the different pumps we had, the auxiliary equipment and inspections we would do. We had four feed pumps." (Curry Discovery Dep. Vol I, doc. no. 25, at 71:20-72:5). When viewed in a light most favorable to the Plaintiff in this case, the issue is not ripe for summary judgment, as there remains a genuine issue of material fact as to whether Mr. Curry worked on the Buffalo pumps located in MMR4.

B.  Mr. Curry's Testimony Regarding the 1964 Overhaul of the Kitty Hawk is Insufficient to Raise a Genuine Issue of Material Fact as to whether Mr. Curry was Exposed to Original Asbestos-Containing Buffalo Pumps

Defendant takes issue with the Panel's finding that the "complete overhaul" of the Kitty Hawk from September 1964 until March 1965 raises a genuine issue of material fact as to whether he could have been exposed to the initial dismantling of Buffalo pumps. (Curry Video Dep., doc. no. 31 at 29:3-9). Defendant argues that Mr. Curry does not identify the name "Buffalo" and that Mr. Curry's testimony that "everything" in MMR4 was torn apart is "generic" and insufficient to raise a genuine issue of material fact. (Id.; Def.'s Objects., doc. no. 56 at 4).

This Court accepts the Panel's view that the 1964 overhaul of the Kitty Hawk raises a genuine issue of material fact as to whether Mr. Curry was exposed to original asbestos-containing Buffalo pump material. During the overhaul, the Kitty Hawk was docked in the Puget Sound Naval Shipyard, roughly 1,000 workers boarded the ship, and work was done on "every aspect of the ship." (Curry Video Dep., doc. no. 31 at 29:3-9). Mr. Curry testified that he was exposed to asbestos during this time because "they had everything tore apart. Had our pumps tore apart. Had our valves apart." (Id. at 30). Mr. Curry lived on the ship during this time. (Id. at 29:24).

Regarding the generality of Mr. Curry's testimony, the following colloqy between defense counsel and the Hon. Elizabeth

T. Hey is informative:

> MR. BRADLEY: I know he said everything in the engine room was worked on but I believe that's a generalized statement that when specifically asked about pumps, he told the person –
>
> JUDGE HEY: Well, I mean, saying that everything got torn down doesn't have to be a generalized statement. That could be a specific statement, yes. Every piece of equipment in this room during this overhaul was torn down, scraped off, and cleaned up. (Oral Arg. Trans., doc. no. 48, at 74:16-75:1).

This Court agrees with the Panel that, particularly in an overhaul situation, testimony that "everything" was torn apart is not necessary general, and is sufficient to raise a genuine issue of material fact. There is evidence on record showing that the 1964 overhaul of the Kitty Hawk was complete, that there were thirty workers in MMR4 alone, that pumps were torn apart, and that Mr. Curry lived on the Kitty Hawk for a year while this occurred. The expert testimony of Arnold Moore, uncontroverted by defendant, indicates that three of the pumps in MMR4 were manufactured by Buffalo, and contained asbestos in their original design. Taken as a whole, plaintiff has raised a genuine issue of material fact as to whether Mr. Curry was exposed to asbestos as a result of the presence of Buffalo pumps in MMR4.

Accordingly, Buffalo's second objection is overruled.

C. There is no Evidence that Mr. Curry Worked with or <u>Around Original Asbestos-Containing Buffalo Pumps</u>

The Panel found that the 1964 overhaul raised a genuine

issue of material fact regarding exposure to original Buffalo pumps. Defendant's Objections attack only the generality of Mr. Curry's testimony on this issue, which was addressed above.

Accordingly, Buffalo's fourth objection is overruled.

> D. Buffalo is not Liable for Asbestos-containing Products Affixed to its Products After Sale

Finally, Buffalo argues that it did not manufacture the asbestos-containing products at issue, and cannot be held liable for replacement or component parts that it did not manufacture or supply. The Panel did not find it necessary to reach the merits of Buffalo's argument regarding replacement or component parts. The Panel correctly concluded that even if Buffalo cannot be held accountable for the addition of asbestos insulation to its products, the record indicates that Mr. Curry could have been exposed to original Buffalo pumps, which included asbestos sealing and gaskets.

Additionally, the Panel correctly determined that Buffalo's liability as a "bare metal" supplier is outside the scope of this Court's referral order, which is limited to issues of causation. Buffalo's argument is essentially that it had no duty to warn of the dangers of asbestos that it neither manufactured nor installed, which is a separate issue from causation, and one on which courts have reached divergent results. See, e.g., Berkowitz v. A.C. & S, Inc., 288 A.D.2d 148, 148 (N.Y. App. Div. 2001)(finding that defendant may have had a "duty to warn

concerning the dangers of asbestos that it neither manufactured or installed on its pumps"). But see, Rastelli v. Goodyear Tire & Rubber Co., 79 N.Y.2d 289, 297-98 (1992) (holding that there is no duty to warn when a manufacturer "produces a sound product which is compatible for use with a defective product").

Therefore, this Court will not address Buffalo's argument that it had no duty to warn for defective products used in conjunction with its own. As the MDL transferee court, and as a matter of efficient judicial administration, this Court is reluctant to predict the outcome of this unsettled issue, the merits of which have not been adjudicated by the New York Court of Appeals. Therefore, the merits of the "bare metal defense" raised by Buffalo is best left for determination in the transferor court, the Southern District of New York, which has more experience and familiarity with the application of New York state substantive law. This ground for summary judgment will be denied without prejudice with leave to refile in the Southern District of New York after remand.

Accordingly, Buffalo's fourth objection is overruled, with leave to refile in the transferor court after remand.

IV. CONCLUSION

Buffalo's first objection is sustained to the extent that Buffalo did not manufacture any of the four main feed pumps Mr. Curry testified about. However, this Court finds that there

remains a genuine issue of material fact on the issue of Mr. Curry's exposure to pumps manufactured by Buffalo. Buffalo's remaining three objections are overruled. Therefore, the Court adopts the Panel's R&R denying summary judgment as to Plaintiff's claims against Buffalo Pumps, Inc.

    An appropriate order follows.